Armen R. Vartian (State Bar No. 155766)
Email: avartian@gmail.com
LAW OFFICES OF ARMEN R. VARTIAN
1601 N. Sepulveda Blvd #581
Manhattan Beach CA 90266
Ph: (310) 372-1355
Fax: (866) 427-3820

Keith A. Attlesey (State Bar No. 168470)
Email: kattlesey@attleseystorm.com
Suzanne Shaw Storm (State Bar No. 229003)
Email: sstorm@attleseystorm.com
ATTLESEY | STORM, LLP
2552 Walnut Avenue, Suite 100
Tustin, CA 92780
Tel: (714) 508-4949
Fax: (714) 508-0015

Attorneys for Plaintiff

FILED
2010 MAY 13 PM 2:06
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLECTORS UNIVERSE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AL ROSSMAN, an individual, ERIC STEINBERG, an individual; RICK WESTLAKE an individual and DOES 1-25, individuals and/or entities whose identities are currently unknown,<br><br>Defendants. | CASE NO. **CV10-03602 SJO(MLGX)**<br><br>**COMPLAINT FOR VIOLATION OF LANHAM ACT; VIOLATION OF RICO; COMMON LAW FRAUD; CALIFORNIA UNFAIR COMPETITION; BREACH OF CONTRACT; CONSPIRACY; DECLARATORY JUDGMENT**<br><br>JURY DEMAND |

Plaintiff COLLECTORS UNIVERSE, INC., for its Complaint in this action, alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1. This action arises under 18 U.S.C. §1962 and the Lanham Act, 15 U.S.C. §1125, and this Court has original jurisdiction of Plaintiff's federal claims under 18 U.S.C. §1964(c), 15 U.S.C. §§1121 and 1125(a), 28 U.S.C. §§1338(a) and (b), and 28 U.S.C. §§1331, and supplemental jurisdiction over Plaintiff's California statutory and common law claims pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Judicial District under 18 U.S.C. §1965(a) and 28 U.S.C. §1391(b) as Plaintiff corporation is headquartered in California, Defendants transact their affairs and do business in this District, a substantial portion of the events, omissions and property which is the subject matter of this action are located in this District, and defendants agreed by contract that this Judicial District is a convenient forum.

## PARTIES

3. At all times relevant hereto, Plaintiff COLLECTORS UNIVERSE, INC. ("CU") was and now is a Delaware corporation, with its principal place of business in Santa Ana, California, and was and now is engaged, inter alia, in the

authentication and grading of collectible coins through its Professional Coin Grading Service ("PCGS") division.

4. Upon information and belief, Defendant Al Rossman is a natural person residing in Nevada, Defendant Eric Steinberg is a natural person residing in Florida, Defendant Rick Westlake is a natural person residing in Mission Viejo, California in this Judicial District and Defendants DOES 1-25 are parties the identities of whom/which are presently unknown to Plaintiff, but who are believed to be natural persons or other entities that reside and/or have a principal place of business in the State of California.

5. Each defendant was, at all material times, the agent of every other defendant acting within the course and scope of such agency with respect to the conduct alleged in this complaint. Each defendant is, as an agent, conspirator, aider and abettor or other liable person, jointly and severally liable with each other defendant for the acts and conduct alleged in this complaint.

## GENERAL ALLEGATIONS

6. PCGS is the leading coin authentication and grading service in the world, having graded millions of coins since its inception in 1986. CU has expended money, time and effort promoting PCGS's business under the PCGS name, and to make PCGS's name familiar to the public at large and to coin dealers and others involved in the coin industry. PCGS has built a valuable goodwill under the name

PCGS and has become the recognized market leader in the business of authenticating and grading coins.

7. PCGS authenticates and grades coins according to PCGS's standards as interpreted and applied by experts employed by CU as PCGS graders. Once a coin has been authenticated and graded, PCGS places the coin in a sealed, tamper-evident hard plastic holder along with a paper insert which bears PCGS's name and logo, a description of the coin including the grade assigned by PCGS on a 1-70 scale, and a unique PCGS certification number and bar code relating to the particular coin. The plastic holder itself contains an embossed variation of the PCGS logo, and in some cases a hologram containing either "PCGS" or "Collectors Universe." CU maintains an on-line database of PCGS-certified coins classified according to PCGS certification numbers, so that anyone viewing an image of a PCGS-certified coin can check whether the certification number appearing on the paper insert is, in fact, the correct number assigned by PCGS to that coin.

8. PCGS guarantees that any coin in a PCGS holder is genuine and has been properly graded, and owners of PCGS-graded coins which are found to be counterfeit or overgraded may submit those coins to PCGS for reimbursement of any difference in value arising from PCGS's error.

9. PCGS does not grade coins that have been "doctored", i.e., artificially altered in order to diminish or conceal defects in the coins, enhance the coins'

appearance, and falsely obtain higher grades. Any dealer who submits coins to PCGS, including Defendants herein, executes the PCGS Dealer Agreement, a written agreement providing terms and conditions for submitting coins to PCGS. The Agreement includes, inter alia, the following:

> 5. Impaired or Altered Coins. (a) Dealer acknowledges that PCGS will not grade coins which, in the judgment of PCGS, bear evidence of harsh cleaning, artificial toning, damaged surfaces, altered surfaces or PVC damage, or other similar impairments or evidence of coin "doctoring," as described below. Dealer agrees that it will not knowingly submit any coins for grading which have been altered in any way, and acknowledges that the determination as to whether a coin should be graded shall be made by PCGS in accordance with its standards. However, because the determination by PCGS to reject such impaired coins will require a review by PCGS's grading experts, Dealer will be required to remit, as set forth herein, the standard grading fee for any such coins that are submitted to PCGS.
>
> (b) Dealer shall not "doctor" coins or knowingly submit to PCGS coins which have been "doctored". Coin "doctoring" involves the alteration of the appearance of a coin to attempt to increase its value, and may involve, among other things, adding substances to coins (such as, among other things, putty, wax, facial oils, petroleum jelly or varnish); treating coins with chemicals (such as, among other things, potash, sulfur, cyanide, iodine or bleach); heat treating coins in any way to alter their appearance; re-matting ("skinning") proof gold; "tapping" and "spooning" (i.e., physically moving surface metal to hide marks); filing rim nicks; or repairing coins (re-tooling metal). Dealer and PCGS agree that PCGS would suffer irreparable damages if Dealer were to engage in coin "doctoring" and that PCGS shall be entitled to not only compensatory damage but also preliminary and final injunctive relief for any breach of Dealer's obligation not to "doctor" coins or knowingly to submit "doctored" coins to PCGS. Dealer agrees that in the event PCGS incurs any attorney fees and/or cost and expenses as a result of said "doctoring", including but not limited to investigating claims of alleged "doctoring", and engaging in legal proceedings with Dealer or any third party relating to same,

PCGS shall be entitled to reimbursement of such fees and costs from Dealer.

13. Legal Compliance. In all activities involving PCGS coins, Dealer warrants that it is and shall remain in compliance with all applicable federal and state antitrust, securities, commodities, consumer protection, unfair trade practices, fraud, and tax laws, and any other applicable laws or regulations. Dealer agrees that in the event PCGS incurs any attorney fees and/or cost and expenses as a result of Dealer's violation of this warranty, including but not limited to investigating claims of alleged violations, and engaging in legal proceedings with Dealer or any third party relating to same, PCGS shall be entitled to reimbursement of such fees and costs from Dealer.

22. Governing Law, Dispute Resolution, Venue and Attorney's Fees. This Agreement is delivered and accepted in the State of California and it is the intention of the parties that it be governed by and construed in accordance with the substantive laws of that State, without regard to conflicts of laws principles. In the event of any controversy, claim, or dispute between the parties hereto arising from, under, out of, or relating to this Agreement or breach thereof, Dealer expressly agrees to the jurisdiction of any Court within the County of Orange, State of California, and further agrees that the County of Orange is a convenient forum for any such disputes arising from, under or pursuant to this Agreement. The prevailing party shall be entitled to recover all of its reasonable attorneys' fees, expenses and costs, including such costs that might not otherwise be recoverable as costs in the absence of this Agreement.

10. "Doctoring" U.S. and foreign legal tender laws is a federal crime under 18 U.S.C. §331:

Whoever fraudulently alters, defaces, mutilates, impairs, diminishes, falsifies, scales or lightens and of the coins minted at the mints of the United States…; or
Whoever fraudulently possesses, apsses, utters, publishes, or sells, or attempts to pass, utter, publish, or sell…any such coin, knowing the same to be altered, defaced, mutilated, impaired, diminished, falsified, scaled or lightened

Shall be fined under this title or imprisoned not more than five years, or both.

11. Defendants have submitted "doctored" United States coins to PCGS for grading on multiple occasions for a period of years, either directly through dealers such as Steinberg or indirectly through other dealers. Defendants knew that these coins had been "doctored", by themselves and/or by other persons engaged by them for that purpose. Their methods included lasering the surfaces of extremely rare proof gold coins to remove surface imperfections, building up commonly-worn or weakly-struck portions of coins, and other physical and chemical processes. Defendants represented to PCGS that these coins had natural surfaces, intending to deceive PCGS's graders so that the "doctored" coins would be certified by PCGS and then sold in the rare coin marketplace

12. Upon information and belief, Defendants have successfully obtained PCGS's certification of certain "doctored" coins, thereby selling said coins to numerous coin dealers and others in person in California and/or by mail nationwide. In every such instance, Defendants knew and intended that by having the coins certified by PCGS they would thereby create a belief in the purchaser of the coin that the coin was a genuine PCGS-certified coin with original surfaces and protected by the PCGS guarantee. The direct and intended result of the acts identified in paragraph 10 above was to cause dealers and the public to be deceived

and confused concerning the condition of the coins passed off by Defendants. In other words, purchasers and prospective purchasers were led to believe that the coins merited the grades printed on the PCGS insert in the holder containing the coin, when in fact Defendants knew such was not the case.

13. By reason of the foregoing unlawful acts, Defendants have caused, and are continuing to cause, substantial and irreparable damage and injury to CU and to the public and Defendants have benefited from such unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

**COUNT ONE – LANHAM ACT**

14. CU repeats and realleges each and every allegation contained in Paragraphs 1-13 hereof as though set forth in full here.

15. Defendants' aforesaid acts constitute an actionable wrong under 15 U.S.C. §1125(a) in that they knowingly and willfully used in connection with their goods a false designation of origin and a false description and representation as to their coins, including words, symbols and numbers tending falsely to describe or represent their coins as meriting the grades assigned to them by PCGS, and have caused such coins to enter into, and be transported and used in interstate commerce with knowledge of the falsity of such designation of origin, description and representation.

16. By reason of the foregoing unlawful acts, Defendants have caused, and are continuing to cause, substantial and irreparable damage and injury to CU and to the public and Defendants have benefited from such unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

17. As a proximate and direct result of Defendants' acts of passing off, CU has sustained damages in an as yet unascertained amount to be proven at trial.

**COUNT TWO -- RICO**

18. CU repeats and realleges each and every allegation contained in Paragraphs 1-17.

19. Defendants are "persons" associated with one another as an "enterprise" engaged in, or the activities of which affect, interstate commerce in the meaning of 18 U.S.C. §1961.

20. Defendants' activities constituted a "pattern of racketeering activity" in the meaning of 18 U.S.C. §1962 in that they violated 18 U.S.C. §1341 (mail fraud), 18 U.S.C. §1343 (wire fraud), and 18 U.S.C. §2320 (trafficking in counterfeit goods and services).

21. Defendants invested the income, or the proceeds of income, derived from their pattern of racketeering activity into an enterprise in violation of 18 U.S.C. §1962(a).

22. Defendants acquired or maintained, directly or indirectly, an interest in or control of an enterprise through their pattern of racketeering activity in violation of 18 U.S.C. §1962(b).

23. Defendants were and are employed by or associated with an enterprise and conduct or participate, directly or indirectly in the conduct of the enterprise's affairs through their pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

24. Defendants conspired to violate 18 U.S.C. §1962(a), (b), and (c).

25. By reason of Defendants' unlawful acts as described above, Plaintiff has been injured in its business or property in the meaning of 18 U.S.C. §1964(c).

**COUNT THREE – COMMON LAW FRAUD**

26. CU repeats and realleges each and every allegation contained in Paragraphs 1-25 hereof as though set forth in full here.

27. Defendants made representations of fact to CU concerning the coins they submitted to PCGS for grading, and intended that CU rely upon those representations. Defendants also omitted to disclose information to CU regarding their "doctoring" activities.

28. CU did, in fact, reasonably rely upon Defendants' statements and omissions in certifying coins, to its detriment.

///

29. By reason of Defendants' unlawful acts and omissions as described above, Plaintiff has been damaged in an amount according to proof at trial.

**COUNT FOUR – CALIFORNIA UNFAIR COMPETITION**

30. CU repeats and realleges each and every allegation contained in Paragraphs 1-29 hereof as though set forth in full here.

31. Defendants' aforesaid acts constitute unlawful, unfair and fraudulent business practices, as prohibited by the common law and by California Business & Professions Code §17200 read with §§17203 and 17205. They constitute violations of RICO and the federal mail and wire fraud statutes, as well as 18 U.S.C. §331.

32. By reason of Defendants' unlawful acts as described herein Defendants have caused, and are continuing to cause, substantial and irreparable damage and injury to CU and to the public and Defendants have benefited from such unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

33. CU has no adequate remedy at law.

34. As a proximate and direct result of Defendants' unlawful conduct and acts of unfair competition, CU has sustained damages in an as yet unascertained amount, but exceeding $100,000.

///

35. In acting as set forth herein, Defendants acted willfully, fraudulently, maliciously, and in wanton disregard of CU's rights. Therefore, CU seeks exemplary damages from Defendants in an amount according to proof at trial.

## COUNT FIVE – BREACH OF CONTRACT

36. CU repeats and realleges each and every allegation contained in Paragraphs 1-35 hereof as though set forth in full here.

37. Defendants have breached their obligations under the PCGS Dealer Agreement not to submit "doctored" coins, and have also violated those portions of the Agreement prohibiting unlawful conduct in connection with their PCGS submissions.

38. By reason of Defendants' unlawful acts as described herein Plaintiff has been damaged in an amount according to proof at trial.

## COUNT SIX – CONSPIRACY

39. CU repeats and realleges each and every allegation contained in Paragraphs 1-38 hereof as though set forth in full here.

40. Defendants formed an agreement to "doctor" coins and submit them to PCGS for certification, in violation of the various statutory and common law rules set forth above, and committed various overt acts in furtherance of this agreement.

41. By reason of Defendants' unlawful acts as described herein Plaintiff has been damaged in an amount according to proof at trial.

## COUNT SEVEN – DECLARATORY JUDGMENT

42. CU repeats and realleges each and every allegation contained in Paragraphs 1-41 hereof as though set forth in full here.

43. Defendant Rossman contends that certain coins, to wit an 1881 Proof U.S. $2 ½ gold piece and an 1885 Proof U.S. $5 gold piece, belong to him and should be returned to him, though the coins were submitted to PCGS for certification by Defendant Steinberg. Defendant Rossman, through counsel, has threatened to sue CU for conversion if CU retains possession of these coins.

44. CU believes that these "doctored" coins are evidence of a crime as well as of civil wrongs detailed in this Complaint, and that returning them to Defendant Rossman would result in the coins' loss and/or destruction. CU is willing to submit the coins for this Court's safekeeping pending trial and/or the involvement of federal enforcement authorities.

45. CU asks this Court to declare that CU may maintain possession of the coins pending trial, or provide them to this Court for safekeeping as evidence.

WHEREFORE, CU prays for judgment against Defendants as follows:

1. That Defendants, their agents, servants, employees, successors, assigns and all those controlled by them, be permanently enjoined from submitting coins to

PCGS for certification, either directly or through a third party, which were "doctored" as defined herein;

2. That Defendants be ordered to deliver for destruction all "doctored" coins in their possession which have been placed in PCGS holders, including the PCGS coin inserts and holders;

3. That Defendants be ordered to account for and pay over to CU all gains, profits and advantages derived by them from their submission of "doctored" coins to PCGS and/or from any other unlawful conduct as described herein;

4. That Defendants be ordered to pay all damages sustained by CU, or, alternatively, provide restitution and disgorge profits, resulting from Defendants' acts of unfair trade practices and unfair competition;

5. That Defendants be ordered to pay to CU a sum equal to three times the amount of CU's actual damages as provided by 18 U.S.C. §1964(c);

6. That Defendants be ordered to pay to CU exemplary damages according to proof;

7. That Defendants be ordered to pay CU's costs of this action, including reasonable attorney's fees; and

///

///

///

8. That the Court grants CU such other and further relief as the Court deems just.

Dated: May 13, 2010

ATTLESEY | STORM, LLP

Suzanne S. Storm
Attorney for Plaintiff